UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ADRON LITTLEMANE FLOYD,

      Petitioner,

v.                                                          Case No. 2:10-cv-123
                                                           HON. ROBERT HOLMES BELL

ROBERT NAPEL,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

      Petitioner Adron Littlemane Floyd filed a petition on June 24, 2010 for a writ of habeas corpus challenging his conviction following a guilty plea to possession of cocaine (possession of less than 25 grams of a controlled substance (M.C.L.§ 333. 7403(a)(5)). On July 17, 2006, Petitioner was sentenced to a term of imprisonment of sixteen months to eight years. The instant petition sets forth five claims:

      I. Petitioner had standing to object to the drugs seized in the trunk of the car.

      II. Petitioner was denied counsel at critical stages and waiver of counsel was in violation of the Sixth Amendment.

      III. Prosecutor requesting Petitioner's phone conversation from the county jail violated 18 USC § 2510 and the Fourth Amendment.

      IV. Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth Amendment.

      V. Petitioner's Sixth Amendment rights were violated when the judge used facts not found by a jury or admitted by the petitioner to depart from the mandatory legislative sentencing guidelines which required Petitioner to be sentenced to an intermediate sanction which is any sanction (probation etc.) other than imprisonment in a state prison. The judges ruling is contrary to *Blakely v. Washington*, 543 US 296 (2004) and *Booker v. Washington*, 543 US 220 (2005).

Petitioner argues that the court should have suppressed drugs seized from the trunk of a car. In the opinion of the undersigned, petitioner's claim is subject to dismissal under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.

In *Riley v. Gray*, 674 F.2d 522 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982), the Sixth Circuit interpreted *Stone* as requiring the district court to make two distinct inquiries in habeas proceedings:

> Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v. Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Id.* at 526 (footnote omitted).

Petitioner, through his attorney, filed a motion to suppress evidence of cocaine found in a box in the trunk of a vehicle Petitioner was riding in. The trial court denied Petitioner's motion to suppress for lack of standing. Petitioner, pro se, filed a another motion to suppress. After hearing oral argument, the trial court again denied Petitioner's motion to suppress. Petitioner challenged the trial court's ruling on direct appeal. The Court of Appeals denied leave to appeal for lack of merit on the grounds presented. (*People v. Floyd*, Mich. Ct. App. No. 274642 (Jan. 10, 2007)). The Michigan Supreme Court denied Petitioner's application for leave to appeal because the Court was

not persuaded the question presented should be reviewed. *(People v. Floyd*, Mich. Sup. Ct. No. 133323 (Sept. 24, 2007)). Petitioner was not prevented from raising his Fourth Amendment claims in the state courts. Indeed, Petitioner did raise these issues in the state courts where they were rejected. Accordingly, Petitioner is precluded from raising this claim under the rule announced in *Stone v. Powell*.

Moreover, it is well-established that by pleading guilty, Petitioner is precluded from raising claims in his habeas petition alleging a denial of rights, constitutional or otherwise, prior to the plea. The state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* Petitioner stated under oath that his guilty plea was done freely and voluntarily and was his own decision. The Court carefully questioned Petitioner regarding his motivation and understanding of entering a guilty plea.

> [THE COURT]: The crime of knowingly or intentionally possessing less than 25 grams of a mixture containing the controlled substance cocaine is a felony. Enhanced as a second offense, it's punishable up to four years- up to eight years, excuse me. And unless you're sentenced to more than one year in prison, the Court is required to impose sanctions against your driver's license. Do you understand the nature of the offense?
>
> [PETITIONER]: Yes. I do.
>
> [THE COURT]: Do you understand the maximum sentence?
>
> [PETITIONER]: Yes. I understand that. I understand. But I thought- I just wanted the record to reflect whether or not the sentencing guidelines apply. Don't they apply in this situation?
>
> [THE COURT]: Yes, They do.

[PETITIONER]: All right. We can roll out.

[THE COURT]: If you plead guilty, you will not have a trial of any kind and you would give up the rights that you would have at trial. The trial right that you'll be giving up include the following. The right to be tried by a jury, the right to be presumed innocent until proven guilty, the right to require that the prosecutor prove your guilt beyond a reasonable doubt, the right to have the witnesses against you appear at the trial, the right to question the witnesses against you, also the right to have the Court order the appearance at trial of any witnesses that you have for your defense, the right to remain silent during the trial and not to have your silence held against you or to testify at the trial if you want to testify. Do you understand these rights?

[PETITIONER]: Yes. I know them.

[THE COURT]: Do you understand that you'll give up these rights if you plead guilty?

[PETITIONER]: Yes, I do.

[THE COURT]: You will also give up any claim that your plea was the result of any promises, or any threats, that haven't been mentioned during the hearing-

[PETITIONER]: No one have not threatened me. No one have not threatened me, any promised me nothing besides what's there.

[THE COURT]: All right. And you'll be giving up any claim that it was not your own choice to plead, do you understand that-

[PETITIONER]: Exactly. It's my own free will and I'm- I know all of the rules so I want the record to reflect this for the Court of Appeals to know that I know all of the rules, I know all of my rights, all of them. So I'm not here playing no dummy game. You know, I'm just-

[THE COURT]: And you understand that any appeal from your conviction and sentence will be by an application for leave to appeal?

[PETITIONER]: Yes. Yes, I do.

[THE COURT]: You will not have an automatic right to an appeal if you plead guilty. Do you understand that?

- 4 -

[PETITIONER]: Well, I just want to make- want the record- as I say- my only- my understanding I want clear is about that - about me being able to raise every issue here.

[THE COURT]: You'll be able to apply for leave to appeal on those grounds.

[PETITIONER]: All right.

[THE COURT]: Do you understand that?

[PETITIONER]: Yes.

[THE COURT]: But again, it will be an appeal by leave not by right. Do you understand that?

[PETITIONER]: Yes.

[THE COURT]: Do you fully understand the plea agreement?

[PETITIONER]: Yes, sir.

[THE COURT]: Do you wish to enter a plea according to that agreement?

[PETITIONER]: Yes, sir.

[THE COURT]: And again, has anyone threatened you in any way?

[PETITIONER]: No, sir. Well, I just wanted to say one thing. Nobody have not threatened me, or promised me nothing, I keep saying that. You know, you ain't go to- you know, I'm very intelligent. Nothing slow about me. I know the law. I just want to make this here clear though, about them disks, I want them recordings to still be preserved for appellate purposes-

[THE COURT]: All right. I'm sure that they will be-

[PETITIONER]: you know that I'm saying are exculpatory, for them to get lost when I get- whatever happens, whatever. I just want them to make sure that they're still around.

[THE COURT]: All right.

[THE PETITIONER]: You know, I will like for that. So I will make sure he get them numbers. I want them all on record. I will give Mr. Spanos this afternoon immediately, the numbers that I want Mr- him to retrieve and the recordings I wish off that computer, which I know that they didn't intentionally distinguish.

[THE COURT]: All right.

[PETITIONER]: So, yes, I would like that. So we can go ahead and proceed with the plea now.

[THE COURT]: Again, has anyone threatened you in any way?

[PETITIONER]: Nobody has not threatened me in no way.

[THE COURT]: Has anyone promised you anything other than the plea agreement to make you wish to plead?

[PETITIONER]: No. The only thing- the only reason- no. nobody [sic] ain't promised me nothing.

[THE COURT]: So it's your own choice to plead?

[PETITIONER]: Yes. Very much so. I ain't got no win, you know, here. You know everything on a file, you know, been denied, so I'll go to appeal court and see what they have to say about it.

[THE COURT]: So the charge in Count III of intentionally possessing less than 25 grams of cocaine, how do you plead?

[PETITIONER]: Guilty.

(Pl. Tr., Docket #29, pp.34-38). Petitioner entered his plea voluntarily and knowingly. Therefore, Petitioner waived his right to assert a Fourth Amendment claim.

In Petitioner's second claim he asserts that he was denied counsel at critical stages and that his waiver of counsel was in violation of the Sixth Amendment. In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court held that a criminal defendant has the right to conduct his own defense at trial. The Court stated:

> It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Illinois v. Allen*, 397 U.S. 337, 350-351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353.

The Court held that a criminal defendant must knowingly and intelligently forgo his right to counsel. The Court stated:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S., at 464-465, 58 S.Ct., at 1023. *Cf. Von Moltke v. Gillies*, 332 U.S. 708, 723-724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S., at 279, 63 S.Ct., at 242.

The record demonstrates that Petitioner knowingly and intelligently waived his right to counsel. The Court carefully questioned Petitioner and made him aware of the dangers and disadvantages of self-representation.

> [THE COURT]: All right. Then the next thing, Mr. Floyd, that I need to make sure that you understand are the dangers of representing yourself. So you need to think about the fact that trials are conducted under established rules of procedure. And the admission of evidence is governed by Rules of Evidence and the law of evidence. And, the jury will be instructed at the conclusion of the trial, and there are specific instructions that the jury will receive. And your lack of knowledge about these things may hurt your chances of being successful at the trial. Also, you will be required to comply with these rules during the trial. They don't change if you choose to represent yourself. The Rules of Evidence still apply. The trial procedure rules will be the same. The instructions to be given to the jury don't change if you choose to represent yourself. So these rules will apply to you.

And even though you may not know or understand them fully, they will be applicable. Do you understand that?

[PETITIONER]: Yes, sir.
.
[THE COURT]: Okay, you have what's called the privilege against self incrimination. Do you understand what that is?

[PETITIONER]: It seems like that's trying to be used against me, but yeah, I know what that means.

[THE COURT]: Well, for instance, you don't have to testify during the trial. And if you choose not to testify, that can't be held against you.

[PETITIONER]: I know that.

[THE COURT]: Okay. If you choose to act as your own attorney, you might inadvertently make some statement that would constitute an admission during the trial. Do you understand what I'm saying to you?

[PETITIONER]: I'm only going to argue the evidence that whatever comes before the Court, that's all I'm going to dispute.

[THE COURT]: All right. But if you make an admission, just as attorney's admissions can be binding on his client, if you admit some fact in the course of representing yourself, that could be something that would hurt your chances of winning. Do you understand that-

[PETITIONER]: Yeah-

[THE COURT]: I'm not saying that you will do that, but I need to make sure that you understand that you could do that-

[PETITIONER]: Yes-

[THE COURT]: And it could happen and-

[PETITIONER]: Yes. I understand.

[THE COURT]: All right. And the last thing I'm going to cover is under the category of what I'll call trial advocacy. It is the collection of the things that lawyers study over the years on how to best and most effectively persuade a jury to decide the case in their client's

favor. This is something that they start to learn about in law school and continue to study and refine over a lawyer's years of practice. Now, you've told me that you've never conducted a jury trial before so there are certain things that perhaps you could do during trial that may not be smart things or helpful things for you to do. There's an old saying out there that the lawyer who represents himself-

[PETITIONER]: has a fool for a client-

[THE COURT]: has a fool for a client. Why do you suppose there is that saying out there?

[PETITIONER]: Because, they say that because first off I really- well, under the art of doctrine, they- states that a person represents himself seeming that he's trying to free himself from the guilt in which (inaudible) him, or the charges that are before him, he's trying to basically trying to say like he ain't did nothing, trying to you know put himself out there like that. But I don't agree with that. You know, I really don't agree with that.

[THE COURT]: All right. Well, I think that the reason that underlies that saying is that one of the important things that a lawyer does for the client is to provide some objective analysis. In other words, if it's your case, it's pretty hard sometimes to step back and see things in the proper prospective. That's why even if it's a lawyer who has a lawsuit it's not a good idea for the lawyer to represent themselves because they may not be able to look at things clearly with an opened mind. Their judgment might be clouded by anger or by other considerations that an independent lawyer could get through. And so if you choose to represent yourself, you'll be giving away that independent objective view point of a lawyer. Do you understand that?

[PETITIONER]:Yes, sir.

(Tr., Docket #28, pp.4-8).

[THE COURT]: Okay. So there are three choices. Continue with Mr. Spanos, ask for a different attorney, or represent yourself. Which-

[PETITIONER]: I wish to represent myself.

[THE COURT]: All right. Done. The Court will note for the record that Mr. Spanos no longer represents this Defendant, and that he is representing himself by his choice in this matter. The Court finds that

- 9 -

> he has been advised of his rights under Michigan Court Rule 6.005 D
> 1. And that he has knowingly and intelligently exercised his right to represent himself.

(Tr., Docket #28, p.14). As demonstrated by the record above, Petitioner knowingly and intelligently waived his right to counsel.

Petitioner further contends that his guilty plea must be set aside because his waiver of counsel was invalid because it was premised on the condition that he would have access to a law library. Prior to the waiver, the prosecution informed Petitioner that under *People v. Mack*, a "Defendant who refuses counsel and chooses to defend himself is not entitled to law library access." (Tr., Docket #28, p.14). In *United States v. Smith,* 907 F.2d 42, 45 (6th Cir. 1990), the Sixth Circuit held that "by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library." Further, there is no controlling Supreme Court precedent that requires affording law library access to a defendant who has relinquished his right to counsel. In *Kane v. Espitia,* 546 U.S. 9, 10 (2005), the Supreme Court noted that it is improper to grant habeas relief for "a violation of a law library access right." Thus, Petitioner has failed to show a violation of his federal constitutional rights.

Petitioner asserts the trial judge failed to offer Petitioner counsel prior to Petitioner entering a guilty plea, denying him effective assistance of counsel at a critical stage of the trial. This claim is without merit. As discussed above, Petitioner knowingly and intelligently waived his right to counsel and decided to represent himself. The trial court accepted Petitioner's request to represent himself on June 12, 2006, and appointed Mr. Spanos as standby counsel. In *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004), the Court adopted the established rule set forth by its sister circuits that a defendant's waiver of counsel at trial carries over to subsequent proceedings

absent a substantial change in circumstances. *See United States v. Unger,* 915 F.2d 759, 762 (1st Cir. 1990) (holding that the district court was free to find that the defendant's earlier waiver was still in force at the sentencing hearing in the absence of intervening events); *United States v. Fazzini,* 871 F.2d 635, 643 (7th Cir.1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver."); *Arnold v. United States,* 414 F.2d 1056, 1059 (9th Cir.1969) (holding that, after a competent waiver of the right to counsel, a new waiver need not be obtained at every subsequent court appearance of the defendant.) At the plea hearing, there was no evidence of a substantial change of circumstances; therefore, the court was under no duty to make an inquiry into the continuing validity of Petitioner's waiver of counsel. Moreover, Petitioner made no request to withdraw his waiver of counsel. Therefore, Petitioner's earlier waiver of counsel was still in force at his plea hearing.

In Petitioner's third claim he asserts that the prosecutor's request for Petitioner's telephone conversation from the county jail violated 18 U.S.C. § 2510 and the Fourth Amendment. As noted above, Petitioner pleaded guilty and therefore waived his right to assert this claim.[1] Accordingly, Petitioner is precluded from raising this claim because he waived his right to assert the claim and because the claim is subject to dismissal under the rule announced in *Stone*, 428 U.S. 465.

---

[1] Additionally, the Petitioner had the opportunity to raise these issues in the state courts where they were rejected. Petitioner raised his Fourth Amendment and 18 U.S.C. § 2510 claim on appeal to the Michigan Court of Appeals; his delayed application for appeal was denied for lack of merit in the grounds presented. (*People v. Floyd*, Mich. Ct. App. No. 274642 (Jan. 10, 2007)). Petitioner raised the same claim in his application for leave to appeal to the Michigan Supreme Court, which was denied because the Court was not persuaded the question present should be reviewed. (*People v. Floyd*, Mich. Sup. Ct. No. 133323 (Sept. 24, 2007)).

In his Fourth claim, Petitioner asserts he was denied the effective assistance of appellate counsel in violation of the Sixth Amendment. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.

Petitioner asserts that appellate counsel was ineffective when appellate counsel raised issues without merit, failed to follow minimum standards, and failed to preserve issues for review. In the context of claims premised on counsel's failure to raise certain issues on appeal, an appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit. Because the claims of denial of counsel at critical stages and waiver of counsel violated the Sixth Amendment are without merit, appellate counsel was not ineffective for failing to raise them on direct review in the state court of appeals. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim because he has not shown a reasonable probability that the unraised issues would have succeeded on appeal. Therefore, habeas relief should be denied on Petitioner's ineffective assistance of appellate counsel claim.

In Petitioner's fifth claim he asserts his Sixth Amendment rights were violated when the judge used facts not found by a jury or admitted by the Petitioner to depart from the mandatory legislative sentencing guidelines which required Petitioner to be sentenced to an intermediate sanction which is any sanction (probation etc.) other than imprisonment in a state prison. Petitioner claims the judge's ruling is contrary to *Blakely v. Washington*, 543 U.S. 296 (2004), and *Booker v. Washington*, 543 U.S. 220 (2005).

Petitioner bases his argument largely on the United States Supreme Court holding in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-92 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 237 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a

- 13 -

certain range), but can never exceed the maximum sentence. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (*Apprendi* line of cases does not apply to Michigan's indeterminate sentencing scheme because judicial factfinding affects only the minimum sentence); *Drohan,* 715 N.W.2d at 789. Furthermore, *Booker* merely reiterated the rule in *Blakely*; therefore, *Booker* also does not apply.

Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not run afoul of *Blakely*. *Blakely,* 542 U.S. at 304-05, 308-09. Because the trial court in the present case sentenced Petitioner well within the parameters of Michigan's indeterminate sentencing scheme, it did not violate his Sixth Amendment rights. *See Chontos*, 2009 WL 3734675, at *1; *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *see also Gray v. Bell*, No. 1:06-cv-611, 2007 WL 172519, at *3 (W.D. Mich. Jan. 19, 2007); *Pettiway v. Palmer,* No. 1:06-cv-132, 2006 WL 1430062, at *1 (W.D. Mich. May 23, 2006); *Stanley v. Jones,* No. 1:06-cv-49, 2006 WL 1459832, at *2 (W.D. Mich. May 23, 2006); *Jones v. Trombley*, No. 2:07-cv-10139, 2007 WL 405835, at *3 (E.D. Mich. Jan. 31, 2007); *Mays v. Trombley*, No. 2:06-cv-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006); *Worley v. Palmer,* No. 2:06-cv-13467, 2006 WL 2347615, * 2 (E.D. Mich. Aug. 11, 2006); *George v. Burt*, No. 2:04-cv-74968, 2006 WL 156396, at *5 (E.D. Mich. Jan. 20, 2006); *Walton v. McKee*, No. 2:04-cv-73695, 2005 WL 1343060, at *3 (E.D. Mich. June 1, 2005).

Similarly, Petitioner claims that the judge inaccurately considered the sentencing guidelines. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus

proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that Petitioner challenges the correctness of his sentence on the basis of state law, Petitioner is not entitled to habeas review unless there has been a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), cert. denied, 496 U.S. 929 (1990).

Because Michigan's indeterminate sentencing scheme is not affect by the United States Supreme Court hold in *Blakely*, Petitioner's argument is without merit. Petitioner's sentence does not exceed the statutory limit nor has Petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the Slack standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: June 21, 2012